# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 491 | **DATE** | 2/1/2012 |
| **CASE TITLE** | Instant Technology, LLC vs. Elizabeth DeFazio et al. | | |

**DOCKET ENTRY TEXT**

Consistent with the discussions in open court, "Defendants' Motion for Leave to File Brief in Excess of 15 Pages" [13] is granted and plaintiff Instant Technology, LLC's "Motion for Temporary Restraining Order and Preliminary Injunction" [4] is taken under advisement. Instant Technology's "Motion for Expedited Discovery" [6] is granted, and counsel are to confer and file a modified Form 52 setting the scope of expedited discovery and the dates by which it can be completed. An evidentiary hearing and briefing schedule, if necessary, will be set at the status report on 2/2/12 at 10:00 am. The parties are encouraged to discuss settlement.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

On January 23, 2012, Plaintiff Instant Technology, LLC, filed a verified complaint alleging that the defendants, former employees of Instant Technology, violated their employment agreements, Illinois law, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by misappropriating confidential information and soliciting Instant Technology's clients in a new business venture. (Dkt. No. 1 ("Verified Compl.").) Pending before the court is Instant Technology's "Motion for Temporary Restraining Order and Preliminary Injunction" (Dkt. No. 4) and "Motion for Expedited Discovery" (Dkt. No. 6). The defendants have responded to the motion, contesting the factual allegations of the Verified Complaint and contending that Instant Technology is not entitled to a temporary restraining order or preliminary injunction. (Dkt. No. 12.) If the court fails to deny the motion for a preliminary injunction, the defendants ask for an evidentiary hearing and expedited discovery to prepare for the hearing. (*Id.* at 5.)

FACTUAL BACKGROUND

According to the Verified Complaint, Plaintiff Instant Technology, LLC, is a staffing company that provides intellectual technology ("IT") professionals to its clients by connecting them with job candidates. (Verified Compl. ¶ 3.) Instant Technology has ongoing relationships with both its clients and third-party suppliers who identify and sponsor IT professionals to work in the United States on H1B visas. (*Id.* ¶ 16.) Specific Instant Technology employees manage and service client accounts, and those employees often form close relationships with clients and third-party suppliers. (*Id.* ¶ 17.) Instant Technology keeps a detailed list of its clients, job candidates, and third-party suppliers, which includes their names, addresses, resumes, and "other information unique to the client, candidate, and third party supplier." (*Id.* ¶ 22.) According to the Verified Complaint, "Instant Technology's Confidential Information cannot be independently developed by its competitors without great effort and expense." (*Id.* ¶ 24.)

**STATEMENT**

Instant Technology protects this confidential information by restricting access to a limited number of employees using a password, preventing non-employees from accessing the information, forbidding employees from copying the information, and requiring employees to return the information when they leave the company. (*Id.* ¶ 25.) In addition, Instant Technology requires its employees to sign employment agreements that bar employees from misappropriating the information. (*Id.* Exs. A-E ¶ 7.)

In early January, 2012, five employees who had access to Instant Technologies's confidential information either resigned or were terminated. (*Id.* ¶¶ 47-49.) Those employees include defendant Elizabeth DeFazio, who was Instant Technology's Executive Vice President for Sales and Operations, defendants Laura Rehn and Megan Marker, both Senior Account Executives, and defendants Bethany Meek and Erin Bauer, who both worked as recruiters. (*Id.* ¶¶ 26, 32-35.) The Verified Complaint alleges that those five employees started a new business venture to compete with Instant Technology. (*Id.* ¶ 50.) It also alleges that the new business venture is funded and led by defendant Joel Katz, the former CEO of Addison Search Ventures, LLC, another company that competes with Instant Technology to provide professional IT staff to companies. (*Id.* ¶¶ 46, 51.)

Each of the five employees had signed an employment agreement with Instant Technology. (*See id.* Exs. A-E.) Each of the employment agreements, in addition to the limitation on misappropriating confidential information, contains the following non-solicitation clause:

> Employee expressly agrees that, as a result of the Proprietary Property Employee will receive, come in contact with, create, or have access to during the term of Employee's employment with Instant . . . Employee shall not directly or indirectly, for a period of two years (2) [three (3) years in the case of DeFazio] after termination of Employee's employment with Instant, perform IT Staffing Services for any of Instant's Clients who have been serviced by Instant within three (3) years prior to the termination of Employee's employment with Instant ("Instant's Serviced Clients") or accept IT Staffing Services business from, or assist any person, firm, partnership, corporation or other entity to perform IT Staffing Services for or accept IT Staffing Services from, any of Instant's Services Clients.

(*Id.* Exs. A-E ¶ 8.)

The Verified Complaint alleges that prior to leaving, the five employees stole Instant Technology's confidential information, took steps to steal clients, and actively encouraged other employees to leave with them. (*Id.* ¶ 52.) Specifically, the Verified Complaint alleges that on December 9, 2011, DeFazio took Meek out for drinks to encourage her to defect, and charged the drinks to Instant Technology as a business expense. (*Id.* ¶ 54.) Additionally, the five employees held off on closing deals with new clients in the second half of 2011, instead performing the necessary work to allow them to steal those clients for their new business shortly after leaving. (*Id.* ¶ 55.) The employees also attempted to hire an administrative assistant for the new business while still working at Instant Technology (*Id.* ¶¶ 57-58), and cancelled a number of appointments with clients before leaving Instant Technology, thus allowing them to reschedule on behalf of their new business (*Id.* ¶ 60).

After the five employees left, Instant Technology performed a forensic analysis of the employees' computers. (*Id.* ¶ 61.) The analysis discovered that in early January, DeFazio downloaded her entire email box onto a flash drive, Meek downloaded all of the candidate data from her computer, and all five employees sent dozens of emails with confidential information to their home email accounts and deleted thousands of Instant Technology emails. (*Id.* ¶¶ 62-66.) Instant Technology also contacted one of its clients, and discovered that the five employees had solicited that client to use the employees' new business. (*Id.* ¶ 67.)

| STATEMENT |
|---|

The defendants' response includes affidavits from each of the defendants disputing the factual allegations against them. For example, the affidavits deny that the defendants stole any information from Instant Technology, inappropriately destroyed any information, or contacted any of Instant Technology's clients, candidates or third-party suppliers. (Dkt No. 12, Ex. A ¶¶ 24-25; Ex. B ¶¶ 15, 17; Ex. C. ¶¶ 20, 22; Ex. D ¶¶ 15, 18; Ex. E ¶¶ 16-17.) All five of Instant Technology's employees stated that they had discussions with Katz about new employment with him (Dkt. No. 12, Ex. A ¶ 21; Ex. B ¶ 12; Ex. C ¶ 18; Ex. D ¶ 16; Ex. E ¶ 18), but they all deny conspiring to start a new company and they all state that they are not "actively working" in the staffing industry at this time (Dkt No. 12, Ex. A ¶¶ 24-25; Ex. B ¶¶ 15, 17; Ex. C. ¶¶ 20, 22; Ex. D ¶¶ 15, 18; Ex. E ¶¶ 16-17).

The defendants also contest that the confidential information Instant Technology seeks to protect is in fact confidential. (Dkt. No. 12, at 12.) They state that the identity of clients and third-party suppliers is well known in the staffing industry and that all of the information Instant Technology seeks to protect is available to any person in the staffing industry. (*Id.*) Specifically, they state that a client's needs are typically published to many staffing firms at the same time (*Id.*), that Instant Technology's job candidates typically use multiple staffing firms at one time (*Id.* at 14), and the identity of third-party suppliers is known throughout the industry (*Id.*). Consequently, Instant Technology does not have an exclusive relationship with its clients, job candidates, or third-party suppliers. (*Id.*)

DISCUSSION

As a preliminary matter, Instant Technology labeled its motion as one "For Temporary Restraining Order and Preliminary Injunction." The rules for granting a temporary restraining order, however, apply only when the nonmoving party has not received notice of the motion. *See* Fed. R. Civ. P. 65(b)(1). Here, the defendants have received notice of the motion and responded, so the court will treat the motion as one for a preliminary injunction. *See* 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2951 (2d ed. rev. 2011) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements.").

A district court may grant a preliminary injunction after giving notice to the non-moving party. *See* Fed. R. Civ. P. 65(a). When considering a motion for preliminary injunction, a court "must determine whether the moving party has demonstrated 1) some likelihood of prevailing on the merits, and 2) an inadequate remedy at law and irreparable harm if the injunction does not issue." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997). If the court determines that those two elements are present, "the court must next consider 3) the irreparable harm the nonmovant will suffer if the injunction is granted balanced against the irreparable harm to the movant if relief is denied, and 4) the effect granting or denying the injunction will have on nonparties." *Id.*

When considering a motion for preliminary injunction, "the court may consider affidavits and verified pleadings as evidence." *Hunter v. Atchison, T. & S. F. Ry. Co.*, 188 F.2d 294, 298 (7th Cir. 1951). When the facts that the parties put forward conflict, however, "the district judge normally should conduct an evidentiary hearing to permit the parties to address credibility issues." *People of State of Ill. ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1342 (7th Cir. 1989). The court holds that an evidentiary hearing is appropriate here, where the parties present two starkly different versions of the facts.

Of course, an evidentiary hearing is necessary only if Instant Technology is entitled to a preliminary injunction as a matter of law, a proposition the defendants dispute. Specifically, they contend that the restrictive

**STATEMENT**

covenants in the employment agreements are not enforceable because they are too general. *See Lawrence and Allen, Inc. v. Cambridge Human Res. Grp., Inc.*, 685 N.E.2d 434, 441 (Ill. App. 1997) (refusing to enforce a non-solicitation clause that was too general because it lacked a geographical or time limitation, and because it forbid soliciting "any client," regardless of whether the employee had formed a relationship with the client).

Even assuming the covenants are too general, however, the defendants fail to address the provision of the employment agreements providing that

> [i]f any portion or portions of the covenants contained in Sections 7 or 8 hereof shall be, for any reason, held invalid or unenforceable or deemed to be too excessive and therefore, unenforceable, such portion or portions of the covenant shall be reinterpreted by the court who shall have made such determination to requalify the limitations provided therein so as to make the covenant enforceable.

(Dkt. No. 1, Exs. A-E ¶ 9(f).) Even if the covenants are too general, therefore, they may be enforceable to some extent. The court declines to address this legal challenge to Instant Technology's motion for a preliminary injunction without further briefing from the parties and a more developed factual record following an evidentiary hearing. The defendants' other legal challenges (that Instant Technology's confidential information are not trade secrets and that Instant Technology cannot enforce the employment agreements because it breached them and because it has unclean hands) are bound up with the facts and cannot be adjudicated until after the evidentiary hearing.

*James F. Holderman*