IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSTANT TECHNOLOGY, LLC, an Illinois limited liability company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 12 C 491 ) |
| ELIZABETH DEFAZIO, LAURA REHN, MEGAN MARKER, BETHANY MEEK, ERIN BAUER, JOEL KATZ, ANDREA KATZ, individuals, and CONNECT SEARCH, LLC, a Delaware Limited Liability Company | ) ) ) ) ) ) ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On April 19, 2012, plaintiff Instant Technology, LLC ("Instant Technology") filed a First Amended Verified Complaint for Injunctive and Other Relief (Dkt. No. 40 ("Am. V. Compl.")) against former employees Elizabeth DeFazio, Laura Rehn, Bethany Meek, and Erin Bauer (collectively "Employee Defendants"), as well as against Joel Katz, Andrea Katz, and Connect Search, LLC ("Connect Search") (collectively "Connect Search Defendants") (altogether "Defendants"). Instant Technology seeks injunctive and other relief from Employee Defendants for breach of employment agreements, breach of fiduciary duty, and alleged violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Instant Technology also seeks injunctive and other relief from all Defendants for alleged violations of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/2-3, tortious interference with business expectancies, and civil conspiracy, and from DeFazio and Connect Search Defendants for tortious interference with contract. Defendants have

-1-

moved to dismiss portions of the breach of employment agreements claim against Employee Defendants (Count I) and the tortious interference with contract claim against DeFazio and Connect Search Defendants (Count III), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons detailed below, "Defendants' Motion to Dismiss Counts I and III of the Verified Complaint for Injunctive and Other Relief" (Dkt. No. 31 ("Defs.' Mot.")) is denied.

## BACKGROUND

At this stage in the litigation, the court must accept the factual allegations in Instant Technology's Amended Verified Complaint as true and must draw all reasonable inferences in Instant Technology's favor. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). The facts set forth below are therefore stated from that perspective.

Instant Technology is in the business of information technology ("IT") staffing, working with clients seeking temporary or permanent job candidates. (Am. V. Compl. ¶ 13.) Instant Technology also works with third-party suppliers of IT job candidates as well as directly with candidates for placement with clients. (*Id.* ¶¶ 17-18.) As a part of this process Instant Technology invests "a substantial amount of money and other resources in developing and maintaining its client, candidate and supplier base." (*Id.* ¶ 21.) In the course of business, Instant Technology compiles certain confidential information not publicly available regarding each client, placement candidate, and third-party supplier. (*Id.* ¶¶ 24.) That information includes services, fees, and purchasing history for each client, profit margins, qualifications of job candidates, "information that is unique to Instant Technology's relationship with its third party suppliers," and extensive contact information unique to each client, candidate and third-party supplier. (*Id.* ¶¶ 23-24.) Instant Technology alleges that this

confidential information is the "product of hundreds of hours of work," is "developed at a substantial cost . . . deriv[ing] economic value," and "cannot be independently developed by its competitors without great effort and expense." (*Id.* ¶¶ 25-26.) Instant Technology recognizes its proprietary interest in this confidential information by requiring employees to keep the information confidential and by restricting its access to selective employees and utilizing security measures such as passwords. (*Id.* ¶ 27.) Further, Instant Technology requires certain employees to sign employment agreements covenanting that they will not misappropriate the information or otherwise duplicate it, and that they will return all confidential information upon termination of the employment relationship. (*Id.*)

DeFazio began her employment at Instant Technology in April of 2004, and prior to her termination held the position of Executive Vice President, Sales & Operations. (Am. V. Compl. ¶ 28.) In this role DeFazio was responsible for nationwide sales, supervised 25 employees, and received compensation commensurate with her executive position. (*Id.* ¶¶ 28-29.) DeFazio entered into an employment agreement on October 31, 2008, effective January 1, 2008 with a term continuing through December 31, 2010 and expiring on January 1, 2011. (*Id.*, Ex. A ("DeFazio Agreement") § 2.) The DeFazio Agreement included two restrictive covenants: the first a covenant not to disclose proprietary property ("Non-Disclosure Covenant"), (*id.* § 7), and the second a covenant not to solicit clients or employees of Instant Technology ("Non-Solicitation Covenant"), (*id.* § 8). The Non-Disclosure Covenant covers "Proprietary Property," defined as "memorandas [sic]; files; programs; clients [sic] account and customer lists; information about and notes regarding customers, candidates and consultants and their reserves . . . ; costs and prices of Instant [Technology]; client needs, requirements and business affairs; records; manuals; [and] computer data

and reports." (*Id.* § 7(a).) DeFazio agreed that "she shall not, while in the employ of Instant [Technology], or *thereafter*, communicate or divulge to, or use for the benefit of herself or any other person . . . any information in any way relating to the Proprietary Property." (*Id.* § 7(b) (emphasis added).)

The Non-Solicitation Covenant provides that:

Employee shall not directly or indirectly, for a period of three (3) years after termination of Employee's employment with instant, perform IT Staffing Services for any of Instant [Technology]'s Clients who have been serviced by Instant [Technology] within three (3) years prior to the termination of Employee's employment with Instant [Technology] ("Instant's Serviced Clients") or accept IT Staffing Services business from, or assist any person . . . to perform IT Staffing Services for . . . any of Instant's Serviced Clients.

(*Id.* § 8.) DeFazio also was restricted from: contacting or soliciting any of Instant's Serviced Clients for three years following termination of her employment, (*id.* § 8(a)), notifying Instant's Serviced Clients of her termination, (*id.* § 8(b)), notifying Instant's Serviced Clients where she is employed during the two-year period following termination or servicing any clients during that time, (*id*. § 8(c)), and "directly or indirectly encourag[ing], solicit[ing], or otherwise attempt[ing] to persuade any employee . . . of Instant [Technology] to leave the employ . . . or breach any employment . . . agreement with Instant [Technology]," (*id.* § 8(e)).

Between January 11, 2008 and March 24, 2011 defendants Meek,[1] Marker, Rehn, and Bauer each entered into employment agreements of indefinite length with Non-Solicitation Covenants. (Am. V. Compl., Exs. B-E ("Employment Agreements").) The terms of the Non-Solicitation Covenants in the Employment Agreements are identical to those in the DeFazio Agreement with one

---

[1] The Employment Agreement labeled "Exhibit D" (Dkt. No. 40, Ex. D ("Meek Agreement")) is between Instant Technology and Bethany Hess, who is now going by the name Bethany Meek.

exception: The Employment Agreements restrict servicing of, contact with, or solicitation of Instant's Serviced Clients for only *two* years following termination, rather than three. (*Id.* § 8.)

Prior to termination, both Rehn and Marker each held the position of Senior Account Manager, reporting directly to DeFazio, Meek held the position of Lead/Senior Recruiter, reporting to the COO, and Bauer held the position of Recruiter, reporting to DeFazio. (Am. V. Compl. ¶¶ 34-37.) In total, Employee Defendants allegedly generated approximately one-third of Instant Technology's revenues. (*Id.* ¶ 39.) The other individual parties to the litigation are Joel and Andrea Katz. Joel Katz used to head Addison Search Ventures, LLC, a competitor of Instant Technology, and currently serves as Chief Investment Officer for Brown Lab Investments (an unrelated business), whose CEO is Andrea Katz. (*Id.* ¶ 48-50.)

During the latter half of 2011, while still in the employ of Instant Technology, DeFazio was regularly late to work and failed to close any sales purportedly because of her efforts to launch Connect Search. (Am. V. Compl. ¶¶ 31-32.) For example, on December 9, 2011, DeFazio took Meek for drinks to discuss the startup of Connect Search and their departure from Instant Technology, and then charged the outing to her Instant Technology expense account. (*Id.* ¶ 60.) On December 29, 2011, after being contacted by DeFazio, representatives from Staffing Now, a staffing company, met with DeFazio to present candidates for an administrative assistant opening they believed to be for Instant Technology. (*Id.* ¶¶ 63-65.) As it turned out, DeFazio was hiring for Connect Search. (*Id.* ¶ 65.) During this same period, Rehn, Marker, Meek, and Bauer, at the behest of DeFazio, each targeted Instant Technology's top clients for sales but intentionally failed to close those sales so that Connect Search could later step in with the leg-work completed. (*Id.* ¶¶ 59, 61.)

In early January 2012, Instant Technology alleges that much of its Proprietary Property was

misappropriated by Employee Defendants. According to the Amended Verified Complaint, DeFazio copied all of her Instant Technology emails, and using portable media "transferred several gigabytes of data." (*Id.* ¶ 68.) In addition, Meek allegedly downloaded all candidate data from her Instant Technology computer during the same period. (*Id.* ¶ 69.) Finally, all Employee Defendants allegedly sent "dozens" of Instant Technology emails from their work to their home email accounts, and then deleted thousands of emails in an effort to hide their conduct. (*Id.* ¶¶ 70, 72.)

On January 3, 2012, Instant Technology fired Bauer based on diminished performance. (Am. V. Compl. ¶ 51.) Three days later, on January 6, 2012, Marker resigned based on a purported desire to move into the suburbs and start a family; the same day Meek also resigned. (*Id.* ¶ 52.) Later that day, Instant Technology fired DeFazio and Rehn due to diminished performance and suspicions that they were collaborating with the other Employee Defendants to start a competitive business. (*Id.* ¶ 53.) That same day, DeFazio, Joel Katz, and Andrea Katz launched Connect Search with each serving as Managers. (*Id.* ¶ 54.) Connect Search offers the same services and "targets the same market and client base" as Instant Technology. (*Id.* ¶ 55.) Today, all Employee Defendants are employed by Connect Search: DeFazio as President, Rehn and Marker as Vice Presidents of Sales, and Meek and Bauer as Vice Presidents of Recruiting. (*Id.* ¶ 57.) Since joining Connect Search, Employee Defendants have contacted clients and third-party suppliers of Instant Technology seeking to transfer their business to Connect Search. (*Id.* ¶ 73.)

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). To be facially plausible, a plaintiff's allegations must allow "the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id*. However, "the plausibility requirement is not akin to a 'probability requirement . . . .'" *Id*. The complaint must simply give defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).

The Seventh Circuit has interpreted *Iqbal* as "admonishing those plaintiffs who merely parrot the statutory language of the claims they are pleading . . ., rather than providing some specific facts to ground those legal claims, that they must do more." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). However, a complaint is sufficient if it gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## ANALYSIS

I.  Count I – Breach of Employment Agreements

   A.  Expiration of the DeFazio Agreement

Defendants argue that the terms of the DeFazio Agreement are no longer in effect due to the expiration of the agreement by its own terms on January 1, 2011, despite the fact that DeFazio remained employed at Instant Technology until her termination on January 6, 2012. (Defs.' Mot. at 2.) However, the court need not address whether DeFazio's employment from January 1, 2011 to January 6, 2012 was subject to the terms of the original DeFazio Agreement. The reason is that even if the DeFazio Agreement expired on January 1, 2011, that expiration would have triggered the three-year Non-Solicitation Covenant which would then be in effect until January 1, 2014, well after the alleged breaches took place.

Defendants contend that *Marwaha v. Woodridge Clinic, S.C.*, 790 N.E.2d 974 (Ill. App. Ct. 2003), precludes this result. In *Marwaha*, the court examined a two-year non-compete clause in an employment agreement that expired in 1996, although the employee continued working in the same job until 2001. The court stated that it would be "strange . . . to provide for a noncompete [sic] provision to exist in perpetuity," and accordingly held that the non-compete clause did not continue as part of the terms of the employee's at-will employment. *Id.* at 977. Defendants contend that *Marwaha* failed to conclude "that the restrictive covenant did, in fact, begin to run on [the agreement's expiration]," (Dkt. No. 47 ("Defs.' Reply") at 4), and that the court therefore should decline to conclude that the Non-Solicitation Covenant began to run on January 1, 2011.

The court disagrees. The *Marwaha* court stated explicitly that "the covenant not to compete was triggered only by the termination of employment under the employment agreement, not by the termination of subsequent employment under a different agreement." *Marwaha*, 790 N.E.2d at 977. Accordingly, the court there plainly contemplated that the covenant began to run in 1996, even though the employee continued to work for the employer after that date. *Marwaha* thus supports the conclusion that the Non-Solicitation Covenant began to run on January 1, 2011, if it was not part of the terms of DeFazio's continuing employment.

Defendants also contend that it is nonsensical to construe the Non-Solicitation Covenant to commence on January 1, 2011, because it would make no sense for it to be in effect while DeFazio was still employed at Instant Technology. Were it in effect at that time, Defendants point out, DeFazio plainly would have violated the Non-Solicitation Covenant even while working for Instant Technology merely by contacting Instant Technology's Serviced Clients. In support of its argument, Defendants point to § 10 of the DeFazio Agreement, which provides that: "Upon the death or

Permanent Disability of Employee . . . or upon the occurrence of a Termination for Cause (as set forth at paragraph 5.f hereof). [sic] Instant shall have the right to terminate this Agreement upon the giving of a ten (10) day Termination Notice to Employee." Based on that clause, Defendants conclude that the Non-Solicitation Covenant could be triggered only by death, permanent disability, or termination for cause, as provided in § 10, within the term of the employment agreement. Because DeFazio's employment ended after the expiration of the DeFazio Agreement, Defendants conclude, the Non-Solicitation Covenant was never triggered.

There are several problems with Defendants' argument. First, § 10 does not define "termination," but instead merely provides for when Instant Technology has the right to terminate the agreement. Accordingly, § 10 does not preclude defining "termination" like the *Marwaha* court to include "the termination of employment *under the employment agreement*." *Marwaha*, 790 N.E.2d at 977 ) (emphasis added).

Second, Defendants' argument ignores the next paragraph of § 10, which clarifies that "in no event shall the Employee's obligations under Sections 5.d, or f, 7 [Non-Disclosure], 8 [Non-Solicitation], and 9 of this Agreement terminate." (DeFazio Agreement § 10.) That clause provides that the Non-Solicitation Covenant would continue in all circumstances, surely including circumstances in which DeFazio was still employed at Instant Technology even when the Non-Solicitation Covenant had been triggered.

Third, construing the Non-Solicitation Covenant to be in effect while DeFazio was still employed at Instant Technology is not absurd. To be sure, it would be nonsensical for Instant Technology to attempt to enforce the Non-Solicitation Covenant against one of its own employees for conducting its own business. But the DeFazio Agreement does not require Instant Technology

to enforce that provision in those circumstances. To the contrary, in that circumstance Instant Technology's course of conduct—continuing to employ DeFazio and compensating her to solicit its clients—would waive the right to enforce the Non-Solicitation Covenant as long as DeFazio's employment continued.

Accordingly, the court concludes that, at the time of the alleged breaches, the DeFazio Agreement either (1) had expired on January 1, 2011, thus triggering the running of the Non-Solicitation Covenant through January 1, 2014, or (2) had continued in effect until January 6, 2012, when DeFazio's employment ended, thus triggering the running of the Non-Solicitation Covenant until January 6, 2015. In either case the Non-Solicitation Covenant was operative at the time of the alleged breaches.[2]

### B. Enforceability of the Non-Solicitation Covenants of Employee Defendants

Defendants next move to dismiss Count I against all Defendants because, they contend, the Non-Solicitation Covenants in the DeFazio Agreement and the Employment Agreements (collectively, the "Agreements") are unenforceable on their face as a matter of law. (Defs.' Mot. at 5.)

Illinois courts view restrictive covenants cautiously, strictly construing such covenants with "any doubts or ambiguities . . . resolved against the restriction." *Marwaha*, 790 N.E.2d at 976. However, only in "extreme cases" should a court find a restrictive covenant to be unenforceable on its face. *Abbott-Interfast Corp. v. Harkabus*, 619 N.E.2d 1337, 1343 (Ill. App. Ct. 1993).

---

[2] The Non-Disclosure Covenant also would be in effect during the alleged breaches regardless of whether it was part of the terms of DeFazio's at-will employment for similar reasons. Specifically, the DeFazio Agreement provides for indefinite operation of the Non-Disclosure Covenant. (DeFazio Agreement § 7(b).) Because the term of this covenant is indefinite, it remained in effect at the time of the alleged breaches regardless of whether it was triggered on December 31, 2010, or on January 6, 2012.

Because "[t]he enforceability of the agreement will necessarily turn upon the particular facts and circumstances of the case," the court should often wait until after the motion to dismiss stage when more facts are available to rule on enforceability. *Id.* The court sees no reason to depart from that practice here.

In Illinois, enforceability should be evaluated under a "three dimensional rule of reason" holding that a covenant is reasonable if it "(1) is no greater than is required for the protection of a legitimate business interest of the employer-promissee; (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public. *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396 (Ill. 2011) (citations omitted).

Defendants argue that Instant Technology had no legitimate business interest in the Non-Solicitation Covenants, and that as such, they must be viewed as unenforceable on their face. (Defs.' Mot. at 6.) Post-employment restraints like non-solicitation covenants are "*usually* justified on the ground that employer has a legitimate business interest in restraining the employee from appropriating the employer's (1) confidential trade information, or (2) customer relationships." *Reliable Fire Equip.*, 965 N.E.2d at 401. In any case, the existence of a legitimate business interest turns on the totality of the circumstances of each case, and factors which may be considered include: "the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions." *Id.* at 403. This inquiry is highly fact-specific and intensive. *See Baird & Warner Residential Sales, Inc. v. Mazzone*, 893 N.E.2d 1010, 1015 (Ill. App. Ct. 2008) (finding the record insufficient at the motion to dismiss stage to evaluate reasonableness); *Abbott-Interfast*, 619 N.E.2d at 1343 (finding it impossible to evaluate reasonableness from the face of the agreement without greater factual record); *see also Nortek*

*Products (Taicang) Ltd. v. FNA Grp., Inc.*, No. 10 C 2813, 2011 WL 2110043, at *4 (N.D. Ill. May 24, 2011) (holding that the reasonableness determination is too fact-based to be appropriate for a motion to dismiss); *Integrated Genomics, Inc. v. Kyrpides*, No. 06 C 6706, 2008 WL 630605, at *7 (N.D. Ill. Mar. 4, 2008) ("[T]he facts of the case are of such importance to the issue of reasonableness the court could not find . . . that making all reasonable inferences in favor of [the plaintiff], it has not stated a claim for relief."); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 923 (N.D. Ill. 2001) (the legitimacy of the employer's interest is "an inherently fact-based determination that is not appropriate at the motion to dismiss stage."). The court thus cannot evaluate the reasonableness of a restrictive covenant until it has can consider all of the relevant facts.

That rule is confirmed by the Illinois Supreme Court's comment in *Reliable Fire Equipment* that "[t]he same identical contract and restraint may be reasonable and valid under one set of circumstances, and unreasonable and invalid under another set of circumstances." 965 N.E.2d at 403. Accordingly, the court often cannot fully evaluate the restraint until the circumstances have been fleshed out through litigation.

Applying the law to the facts in this case, Instant Technology has alleged a valid interest in the enforcement of the Non-Solicitation Covenants to protect its confidential information. Specifically, Instant Technology alleges that Employee Defendants, through their employment with Instant Technology, "had intimate knowledge of Instant Technology's Confidential Information" including clients, candidates, and suppliers. (Am. V. Compl. ¶ 38.) Moreover, the information and relationships that Instant Technology seeks to protect through the restrictive covenants are developed through "hundreds of hours of work" at "substantial cost." (*Id.* ¶ 25.) Instant further alleges that this information is not public, and cannot be compiled independently absent "great effort

and expense." (*Id.* ¶¶ 24-26.)

Viewing the complaint in the light most favorable to Instant Technology, these allegations state a claim for injunctive relief based on a legitimate business interest. *Reliable Fire Equip.*, 965 N.E.2d at 403. That is sufficient to survive a motion to dismiss, for the court cannot now evaluate fully whether the scope of the Non-Solicitation Clause is reasonable to protect this interest in light of the absence of information in the record at this stage. For example, the court has no indication of the number of companies competing with Instant Technology or Connect Search in the IT candidate placement industry. *See Integrated Genomics*, 2008 WL 630605, at *7. The court also cannot determine at this time the hardship that enforcement of the restrictions would place on the Employee Defendants. *Abbott-Interfast*, 619 N.E.2d at 1343. Defendants' motion to dismiss Count I is accordingly denied.

II.     Count III – Tortious Interference with Contract

Defendants contend that the tortious interference with contract claim (Count III) against DeFazio and Connect Search Defendants should be dismissed because the Agreements are unenforceable. (Defs.' Mot. at 11.) However, because the court did not hold the Agreements unenforceable, Defendants' argument is moot. The motion to dismiss Count III is also denied.

CONCLUSION

For the reasons set forth above, "Defendants' Motion to Dismiss Counts I and III of the Verified Complaint for Injunctive and Other Relief" (Dkt. No. 31) is denied. All counts remain pending against Defendants. Defendants's Answer is due on or before July 9, 2012. Counsel are requested to meet pursuant to Rule 26(f) and jointly file a Form 52 on or before July 11, 2012. This case is set for a report on status and entry of a scheduling order on July 12, 2012 at 9 am. The parties

are encouraged to discuss settlement.

ENTER:

                                                                                    _____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: June 26, 2012