| | |
|---|---|
| INSTANT TECHNOLOGY, LLC, an Illinois Limited Liability Company, | )<br>)<br>) |
| Plaintiff, | ) Case No. 12 C 491<br>)<br>) |
| v. | ) Judge James F. Holderman<br>) |
| ELIZABETH DEFAZIO, LAURA REHN, MEGAN MARKER, BETHANY MEEK, ERIN BAUER, JOEL KATZ, ANDREA KATZ, and CONNECT SEARCH, LLC, a Delaware Limited Liability Company, | ) Magistrate Judge Geraldine Soat Brown<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| ELIZABETH DEFAZIO, | )<br>) |
| Counterplaintiff, | )<br>) |
| v. | )<br>) |
| INSTANT TECHNOLOGY, LLC, an Illinois Limited Liability Company, | )<br>)<br>) |
| Counterdefendant. | )<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

For the reasons stated below, Plaintiff Instant Technology, LLC's Motion for Civil Contempt and Other Sanctions (Pl.'s Mot.) [Dkt 67] is denied without prejudice.

## BACKGROUND

Plaintiff Instant Technology, LLC ("Instant") is an information technology staffing firm. (Am. Compl. ¶ 2.) [Dkt 40.] Instant alleges in that in late 2011, Instant's executive vice president Elizabeth DeFazio induced Instant employees Laura Rehn, Megan Marker, Bethany Meek, and Erin Bauer to leave Instant, steal Instant's confidential information, and start a new information technology staffing company, Connect Search, LLC, with staffing industry veterans Joel and Andrea Katz. (Am. Compl.) Supervision of discovery was referred to this court. [Dkt 51.]

The present motion arises out of a subpoena issued by Instant to Richard Lee and his company RJSL & Company, LLC ("RJSL"). (Pl.'s Mot. at 1.) Mr. Lee and RJSL are not parties to the litigation. (*Id*. ¶ 2.) Instant hired RJSL as a consultant pursuant to a written consulting agreement from January 2007 through January 2011. (Lee Resp. at 2.) [Dkt 108.] Instant's counsel has described Mr. Lee's work as that of an "outside CFO." (Pl.'s Renewed Suppl. Mot. Compel, Ex. A, Tr. Aug. 3, 2012 at 5.) [Dkt 69.] While RJSL served as a consultant at Instant, Mr. Lee was privy to Instant's confidential information. (Pl.'s Mot. ¶ 3.)

When RJSL was retained, Instant provided Mr. Lee with a laptop computer. (Lee Resp. at 2.) Mr. Lee maintains that he offered to return the laptop at the time his relationship with Instant ended in January 2011, but Instant's CEO Rona Borre told Mr. Lee that he could keep it. (*Id*.) Instant admits that it never pressed Mr. Lee to return the laptop. (Pl.'s Mot. ¶ 2.)

After this lawsuit was filed, Instant issued a subpoena duces tecum to Mr. Lee on April 16, 2012, on the belief that Mr. Lee had shared Instant's proprietary information with the defendants. (*Id.* ¶ 5.) The subpoena requested five categories of documents: (1) all documents or tangible things relating in any way to Mr. Lee's work under the consulting agreement, (2) all documents or tangible

2

things related in any way to Instant, (3) all documents or tangible things relating to communications with the defendants since August 2011, (4) all documents relating to any work done for defendants, and (5) any contracts or agreements that Mr. Lee had with the defendants. (*Id.*, Ex. A-1.)[1] The subpoena did not expressly refer to the laptop, although the term "document" was defined in the rider to include electronically stored information. (*Id.*) Instant's counsel served Mr. Lee via email and overnight delivery. (Pl.'s Mot. ¶ 7.)

Along with the subpoena, Instant's counsel included a copy of Instant's complaint in this litigation and a copy of Mr. Lee's consultant agreement with Instant. (*Id.*, Ex. A-2.) In a cover letter, Instant's counsel told Mr. Lee, "It has come to Instant's attention that you may have violated . . . your Agreement . . . ." (*Id.*) Instant "demand[ed]" that Mr. Lee return all Instant property, including but not limited to any computers and hard copies of documents, no later than April 20, 2012. Instant also demanded that Mr. Lee "preserve all forms of paper and electronic evidence that will be relevant in the pending lawsuit." (*Id.*)

According to Instant's counsel, Mr. Lee "promptly contacted [him] by phone" the same day and indicated that he would return the laptop the following day. (*Id.*, Ex. A, Decl. David Ritter ¶ 4.) Apparently, Mr. Lee then retained counsel, because on April 18, Instant's counsel received a call from Mr. Lee's counsel who said that Mr. Lee did not want to return the laptop because it was a gift from Ms. Borre. (*Id.* ¶ 6.) On April 20, Instant's counsel emailed Lee's counsel demanding that the laptop be returned by noon on the next business day or Instant would commence "legal action to obtain the computer or involve the police." (*Id.*, Ex. A-3.)

---

[1] The subpoena also requested documents regarding communications, work, contracts or agreements Mr Lee has had with Alfredo Aoun, a non-party to this litigation. Mr. Aoun is described in other filings in this case as Connect Search, LLC's chief information officer. [Dkt 83-10.]

On April 23, in a letter to Instant's counsel, Mr. Lee's counsel took exception to the tone of Instant's counsel's communications with Mr. Lee, and stated that the subpoena had not been properly served and should have should have been issued to RJSL instead of Mr. Lee. (*Id.*, Ex. A-4.) Mr. Lee's counsel described Instant's document requests as broad, reiterated that the laptop was Mr. Lee's property, and indicated that "Mr. Lee would be prepared to search for and provide any responsive documents in the event of a properly tailored request made under reasonable conditions and circumstances." (*Id.*, Ex. A-4.)

On April 23, Instant's counsel reissued the subpoena to RJSL care of Mr. Lee. (*Id.*, Ex. A-5.) On April 27, Instant's counsel sent a letter to Mr. Lee's counsel that informing him that Ms. Borre had filed a report with the police about the laptop. (*Id.*, Ex. A-6.) On May 16, RJSL and Mr. Lee, through their counsel, responded to the subpoena, providing copies the consultant agreement between RJSL and Instant. (*Id.*, Ex. A-7.) According to Instant's counsel, on June 22, Mr. Lee's counsel indicated his client's refusal to return the laptop. (Ritter Decl. ¶ 12.)

On July 24, Instant filed a motion to compel Mr. Lee's compliance with subpoena. [Dkt 60.] At the August 3 motion hearing, this court found that some of Instant's requests for documents were overbroad, but that any documents relating to Mr. Lee's interactions with the defendants since August 2011 were potentially relevant and discoverable. (Tr. Aug. 3, 2012 at 6.) [Dkt 69-1.] Mr. Lee was ordered to produce the laptop to have the hard drive imaged at Instant's expense by August 10. (Order, Aug. 3, 2012.) [Dkt 64.][2] The results of the forensic examination were to be given to Mr.

---

[2] Instant also filed an action for replevin in state court to recover the computer. (Pl.'s Mot. ¶ 19.) On August 8, the state court judge ordered Mr. Lee to produce the laptop on August 10, so that its hard drive could be imaged. (*Id.*, Ex. B.) The order states that Mr. Lee/RJSL "may retain possession of the laptop." (*Id.*)

Lee's counsel, who would then produce responsive documents. (*Id*.)

After examination of the laptop, Instant's computer forensic expert determined that on April 17, the day after Mr. Lee received Instant's subpoena, a new operating system had been installed on the laptop which erased "any previous information that may have been stored on the computer." (Pl.'s Mot., Ex. C., Decl. Wolfgang Wilke ¶¶ 13-15.)

On August 17, Instant filed a renewed motion to compel and the present motion for contempt and other sanctions. The renewed motion to compel requested that Mr. Lee allow Instant's computer forensic expert to examine every electronic device that Mr. Lee has had in his possession since August 1, 2011. (Pl.'s Renewed Suppl. Mot. Compel ¶¶ 16-17.) At that point, there was a pause in the litigation while the parties attempted to settle the lawsuit. When that proved unsuccessful, proceedings resumed. At the October 25 motion hearing, Mr. Lee's counsel and Instant's counsel agreed that Mr. Lee had made his electronic devices available to Instant's counsel, and thus Instant's renewed motion to compel was denied as moot. [*See* dkt 100.] A briefing schedule was set on Instant's motion for contempt. (*Id*.)

According to his response to Instant's motion for contempt, Mr. Lee installed the new operating system on the laptop "because it previously crashed several times and also contained personal and proprietary information, the subject matter of which was not responsive to the subpoena." (Lee Resp. at 3.) Mr. Lee also explains that in the summer of 2011, Mr. Lee replaced the hard drive on the laptop because it had crashed several times. (*Id*.) However, Mr. Lee backed up the files on the laptop to an external hard drive and transferred those files to a new laptop. (*Id*.) Mr. Lee has produced that new laptop to Instant. (*Id*.)

Upon examining the new laptop, Instant found a directory and "subdirectory

'D:\Users\Richard\Documents\RJSL\Static\3_Entrepreneurship\Past Clients\IT'" which, according to Instant's computer forensic expert, appears to contain an unspecified number of documents relating to Instant Technology that were created (presumably, transferred to the new laptop) on December 13, 2011. (Pl.'s Reply, Ex. 2, Decl. Wolfgang Wilke ¶ 13.) In total, the directory and subdirectories on the new laptop contain 577 documents. (*Id*.)

In its Reply, Instant complains of the fact that Mr. Lee and his counsel failed to tell Instant that the documents were on Mr. Lee's new laptop. "This entire matter could have likely been avoided if Mr. Lee simply printed these documents and produced them to Instant Technology in April." (Pl.'s Reply at 7.) Instant argues that it has had to spend money attempting to recover a computer that had no data only to learn that some of the documents were on another computer. Instant's reply, however, does not describe the nature of the documents found on the new laptop or whether they are within the scope of the August 3 order. Instant asks for an order compelling Mr. Lee to pay its expenses related to this matter.

## DISCUSSION

"To prevail on a request for a contempt finding, the moving part must establish . . . that (1) a court order sets forth an unambigious command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *U.S. SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).[3]

---

[3] While there is a "large body of case law [that] holds that civil contempt must be proved by clear and convincing evidence," a recent Seventh Circuit decision has suggested in dictum that preponderance of the evidence may be the better standard. *See SEC v. First Choice Mgt. Servs., Inc.*,

A subpoena issued by an attorney qualifies as a court order. *Hyatt*, 621 F.3d at 693. The advisory committee notes to Rule 45, however, caution that "contempt should be very sparingly applied when the non-party witness has been overborne by a party or attorney." Fed. R. Civ. P. 45(e) advisory comm. nn. (1991); *see also Hyatt*, 612 F.3d at 693-94 (finding that provisions of Rule 45 "suggest at a minimum that contempt motions for noncompliance with a discovery subpoena should be entertained with special attention to the procedural and substantive rights of the nonparty witness"). Similarly, Rule 45 requires a party serving a subpoena on a non-party to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1).

The court cannot find that Instant has proven that Mr. Lee or RJLS is in contempt of court based on the facts presented. Instant filed the contempt motion under the impression that after receiving the subpoena, Mr. Lee had deliberately installed the new operating system in the laptop for the purpose of wiping out relevant documents. Now it appears that Mr. Lee may have installed new hard drives on the computer a number of times before this lawsuit was filed, raising doubt about any improper motive in installing a new operating system just after the subpoena was served. Also, it appears that some – perhaps all – of the documents were not destroyed but were in fact backed up to another computer. Notwithstanding Instant's current comment that Mr. Lee should just have copied and produced those documents, it has not been demonstrated that those documents are within the scope of the August 3 order.

Furthermore, Instant expended considerable resources in an ultimately unproductive effort to

---

678 F.3d 538, 544-45 (7th Cir. 2012). Instant has not established contempt under either standard, thus the issue need not be resolved here.

get the laptop itself, rather than just the documents that might be evidence in this case. At the time the subpoena was issued, the laptop had been in Mr. Lee's possession for more than five years total, and for more than a year after he had last worked for Instant. Thus, it is possible that the laptop did have some private, personal information on it that Mr. Lee did not want to share with Instant. Then, in April 2012, Instant demanded Mr. Lee return the laptop, threatened police action and subsequently brought not only several motions in this case but also a state court replevin action. Notably, the state court did not order Mr. Lee to return the laptop to Instant. To the extent Instant's resources were expended for that effort, they are not compensable in this action.

Mr. Lee has complied with the court's orders, has turned over all his electronic devices, and has asserted that he has fully responded to all of Instant's requests. (Lee Resp., Ex. E.)

Accordingly, based on the evidence currently before the court, Instant's motion is denied without prejudice. If Instant acquires evidence that Mr. Lee or RJSL has not produced all documents required by the August 3 order, Instant may bring a renewed motion.

## CONCLUSION

For the aforementioned reasons, Plaintiff Instant Technology, LLC's Motion for Civil Contempt and Other Sanctions [dkt 67] is denied without prejudice.

_____
Geraldine Soat Brown
United States Magistrate Judge

**DATE:** January 22, 2013