IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INSTANT TECHNOLOGY, LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12 C 491 |
| ELIZABETH DEFAZIO, LAURA REHN, MEGAN MARKER, BETHANY MEEK, ERIN BAUER, JOEL KATZ, ANDREA KATZ, individuals, and CONNECT SEARCH, LLC, a Delaware Limited Liability Company, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On April 19, 2012, plaintiff Instant Technology, LLC ("Instant Technology") filed a First Amended Verified Complaint for Injunctive and Other Relief (Dkt. No. 40 ("Am. V. Compl.")) against former employees Elizabeth DeFazio, Laura Rehn, Bethany Meek, and Erin Bauer (collectively "Employee Defendants"), as well as against Joel Katz, Andrea Katz, and Connect Search, LLC ("Connect Search") (collectively "Connect Search Defendants") (altogether "defendants"). Instant Technology seeks injunctive and other relief from Employee Defendants for breach of employment agreements, breach of fiduciary duty, and alleged violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Instant Technology also seeks injunctive and other relief from all defendants for alleged violations of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/2-3, tortious interference with business expectancies, and civil conspiracy, and from DeFazio and the Connect Search Defendants for tortious interference with contract.

Instant Technology submitted the report of its damages expert, Dwight D. Steward, on October 29, 2012, well before the close of discovery on March 15, 2013. (Dkt. No. 204, Ex. A; *see also* Dkt. No. 114.) On June 4, 2013, the court granted Instant Technology's motion to update the report to account for additional information it had gathered during discovery, but stated that Instant Technology could not add new theories that were not included in the original expert report. (*See* Dkt. No. 178, at 6 ("If the damages expert includes new theories in his report, rather than merely updating it to account for new information Instant Technology has learned since October 29, 2012, the defendants may move to strike the new theories.").) Instant Technology submitted Steward's updated expert report on June 20, 2013. (Dkt. No. 204, Ex. C.) Thereafter, the defendants moved to strike paragraphs 5, 6, 7, and 8 of the updated report on the ground that they include new theories not presented in Steward's original report. Instant Technology has responded to the motion. (Dkt. No. 213.) The defendants' reply is due on September 12, 2013, but the court has no need of a reply. For the reasons stated below, the motion is granted.

Federal Rule of Civil Procedure 26(a)(2)(D) provides that "[a] party must make [expert] disclosures at the times and in the sequence that the court orders." As mentioned above, all discovery, including expert discovery, closed on March 15, 2013. In addition, the deadlines for the submission of expert reports was months earlier, in October 2012. (Dkt. No. 51.) Instant Technology filed its motion to update its expert report on March 15, 2013, at the very end of discovery and well after the deadline for the submission of expert reports. (Dkt. No. 152.) In light of the untimeliness of the motion, the court allowed Instant Technology to update its expert report to add "additional or corrective information," as Instant Technology was required to do under Fed. R. Civ. P. 26(e), but did not allow Instant Technology to add new expert theories. *See*

*Talbert v. City of Chicago*, 236 F.R.D. 415, 424 (N.D. Ill. 2006) (listing cases in which courts have excluded untimely expert reports that espoused new theories, and stating that "[i]t is no surprise that supplemental expert opinions that threaten to belatedly send the case on a wholly different tack are excluded"). That resolution allowed Instant Technology to update its existing expert theories with new data and information since it submitted its original report, but prevented Instant Technology from inappropriately delaying the rest of the case by espousing new theories requiring additional discovery at the very end of the discovery period.

Steward's original report espoused four theories. First, it calculated the profits that Instant Technology would have earned if the Employee Defendants had not left the company by calculating the proportion of revenue from each of Instant Technology's clients attributable to the Employee Defendants in the past and extrapolating those amounts into the future. (Dkt. No. 204, Ex. A ¶¶ 8-14.) Second, it calculated the cost to Instant Technology of training additional employees to replace the Employee Defendants. (*Id.* ¶¶ 15-19.) Third, it calculated the amount Instant Technology would have to spend to recruit individuals to replace the Employee Defendants. (*Id.* ¶¶ 20-21.) Finally, it calculated the additional funds Instant Technology had to spend to retain its remaining employees because the Employee Defendants left. (*Id.* ¶ 22.)

Paragraphs 5-8 of Steward's updated expert report attempt to calculate Instant Technology's damages in a different way. Specifically, they use the revenue that Connect Search earned from Instant Technology's clients to calculate revenue that would have gone to Instant Technology absent the defendants' wrongful actions. (*See* Dkt. No. 204, Ex. C ¶¶ 5-6.) In addition, the updated report attempts to calculate Instant Technology's damages based on the job placement opportunities that Connect Search obtained from Instant Technology clients and that were therefore unavailable to Instant Technology. (*Id.* ¶¶ 7-8.)

Nothing in Steward's original report attempted to calculate Instant Technology's damages based on Connect Search's revenue or business activity with Instant Technology's clients. Indeed, at his deposition Steward explicitly disavowed reliance on any such data:

> Q. Do you have any understanding as to whether any of the clients listed on Table 1-B are doing business or did business in 2012 with any of the defendants?
>
> [By Dr. Steward:] A. I don't know.
>
> Q. Did that matter to your analysis at all?
>
> A. No.

(Dkt. No. 204, Ex. E ("Steward Dep.") at 131:22-132:5.) Accordingly, the court determines that paragraphs 5-8 of Steward's updated report inappropriately present new theories in violation of the court's order of June 4, 2013. (Dkt. No. 178.)

## CONCLUSION

For the reasons explained above, the defendants' motion to strike paragraphs 5-8 of Dwight Steward's updated expert report (Dkt. No. 204.) Paragraphs 5-8 of Dwight Steward's updated expert report (Dkt. No. 204, Ex. C.) are struck. Nothing in this order prevents Instant Technology from relying on the facts underlying paragraphs 5-8 of Steward's report. The schedule set on August 22, 2013 (Dkt. No. 215) remains in effect. The parties are once again encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: September 3, 2013