UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSTANT TECHNOLOGY, LLC, an Illinois Limited Liability Company, Plaintiff, | ) ) ) ) Case No. 12 C 491 |
| v. | ) ) Judge James F. Holderman |
| ELIZABETH DEFAZIO, et al. Defendants. | ) ) Magistrate Judge Geraldine Soat Brown ) ) |

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, United States Magistrate Judge

For the following reasons, Defendants' Emergency Motion for Protective Order and Sanctions (Defs.' Mot.) [dkt 179] is granted as further set out herein.

**Background**

A. The Confidentiality Order

Plaintiff Instant Technology, LLC ("Instant") is an information technology staffing firm. (Am. Compl. ¶ 2.) [Dkt 40.] Instant's complaint in this case alleges that in late 2011, Instant's former executive vice president Elizabeth DeFazio induced Instant employees Laura Rehn, Megan Marker, Bethany Meek, and Erin Bauer to leave Instant, steal Instant's confidential information, and start a new information technology staffing company called Connect Search, LLC, along with staffing industry veterans Joel and Andrea Katz. (*Id.* at 51-81.) Supervision of discovery was referred to this court. [Dkt 51.]

1

This has been a highly contentious litigation between competitors, as illustrated by the fact that Instant has filed four motions for a temporary restraining order or preliminary injunction, claiming, *inter alia*, that defendants are using Instant's confidential information to compete unfairly. [Dkt 4, 27, 83,173.] In the course of discovery, pursuant to Fed. R. Civ. P. 26(c), an Agreed Confidentiality Order was entered permitting a party to designate certain classes of sensitive documents as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL-OUTSIDE COUNSEL ONLY." (Agreed Confidentiality Order ¶¶ 2-3.) [Dkt 102.] The latter designation is only for those documents that contain "highly sensitive information" that "would tend to cause substantial harm to the designating party's legitimate business, competitive position or privacy interests." (*Id.* ¶ 3.) Documents designated as "subject to protective order" may only be shared with certain persons such as the parties, the court, and experts, but – importantly for this motion – documents carrying the "Outside Counsel Only" designation may not be shared with the parties. (*Id.* ¶ 6.)

The Confidentiality Order provides a method for challenging a designation: counsel for the parties must meet and confer to discuss the challenged designation, and if no agreement can be reached, the designation is to be challenged by motion. (*Id.* ¶ 11.) Until the court rules on the propriety of the designation "all parties shall continue to treat the materials" as confidential. (*Id.*) The agreement further mandates that "[a]ny party wishing to file a document designated as Confidential Information in connection with a motion . . . must comply with Local Rule 26.2." (*Id.* ¶ 9.) That rule provides that a party must provisionally file the document under seal and "move the court for leave to file the document under seal." L.R. 26.2(c).

B.  <u>Instant's Motion, Memorandum and Confidential Exhibits</u>

On Thursday, May 23, 2013, the parties appeared before the District Judge on Instant's motion for leave to file a memorandum in excess of 15 pages in support of Instant's most recent motion for preliminary injunction. [Dkt 169.] Instant attached its proposed memorandum to that motion, but without exhibits. (*Id.*, Ex. A.) The District Judge granted Instant leave to file its motion and memorandum that day, and Instant filed the motion for preliminary injunction with the accompanying memorandum and exhibits. [Dkt 172, 173, 176.]

On Wednesday, May 29, at 3:47 P.M., defendants' counsel notified Instant's counsel via email that documents designated "Confidential – Outside Counsel Only" containing Connect Search's highly sensitive financial information had been filed in the public record as exhibits to Instant's memorandum. (Defs.' Mot., Ex. A.) That email was sent to two attorneys with appearances on record for Instant: David Ritter and Austin Burke. (*Id.*) Defendants' counsel requested that Instant's counsel "[p]lease take whatever steps are necessary to remove these documents from the court's file." (*Id.*) A day later, May 30, at 1:37 P.M., Instant's counsel Burke responded with a one-sentence email stating, "Please let us know which financial information, specifically, you believe should be removed from the court's file so we might redact the documents in question appropriately." (*Id.*, Ex. B.) About two hours later, defendants' counsel responded with a list of documents that should be removed and added, "These documents need to be removed from the court record immediately." (*Id.*, Ex. C.) Instant's counsel Burke replied with another one-sentence email asking, "What information in these documents do you believe to be confidential?" (*Id.*, Ex. D.)

On Friday afternoon, May 31, at 3:51 P.M., defendants' counsel notified Instant's counsel

3

Burke (with a copy to attorney Ritter) that, in defendants' view, Instant had violated the Confidentiality Order. (*Id.,* Ex. E.) Defendants' counsel once again asked that the documents be removed, and requested that other documents marked as "Confidential – Subject to the Protective Order" that had been filed as exhibits to Instant's motion also be removed. (*Id.*) He added, "If you do not address this immediately, we will raise the issue with the court." (*Id.*)

Instant's counsel Ritter has submitted a declaration stating that a paralegal in his office first attempted to contact the office of the Clerk of the Court on Monday, June 3, but it was not until Tuesday, June 4, that the paralegal spoke with the clerk's office. (Pl.'s Resp., Ex. 1, Decl. David Ritter ¶ 11.) [Dkt 186.] He does not explain why the paralegal was not able to reach the clerk's office on Monday. When Instant's paralegal explained the situation, "the clerk promptly corrected the docket and sealed all exhibits containing 'Confidential' designations." (*Id.* at ¶ 12.)

At about noon on June 4, Instant's counsel Burke informed defendants' counsel about the removal of the documents from the public docket. (Defs.' Mot., Ex. F.) Later that day, defendants' counsel emailed Instant's counsel Burke (with a copy to Instant's attorney Ritter) asking him to "confirm whether or not the attachments that were designated 'Confidential – Outside Counsel Only' by Defendants were provided to your client." (*Id.*, Ex. G.) Receiving no response, on June 5, defendants filed the present emergency motion requesting that Instant's counsel be compelled to disclose whether anyone at Instant had been given the confidential documents and asking for an award of defendants' attorneys' fees incurred in bringing the motion. (Defs.' Mot. at 5.)

On June 6, Instant's counsel Ritter sent an email stating that he confirmed that the documents had not been sent to his client and that "the only people who have seen or have had access to them have been attorneys and staff in my office." (Pl.'s Resp., Ex. 2.) Attorney Ritter's declaration states

4

that he was traveling on business on June 4 and did not have an opportunity to check his records and respond immediately to the June 4 message. (Ritter Decl. ¶ 13.) He also states that he did not receive a phone message from defendants' counsel prior to the filing of the motion.

Instant admits that the documents were filed in violation of the Confidentiality Order, but contends that "it accidentally filed" the confidential documents in "an innocent clerical error." (Ritter Decl. ¶ 2; Pl.'s Resp. at 1.) Instant argues that sanctions are not warranted for that "innocent oversight." (Pl.'s Resp. at 2-3.)

In their reply brief, defendants request affidavits from Instant and its counsel detailing the filing of the documents, Instant's counsel's response, and whether anyone at Instant has seen the documents. (Defs.' Reply at 6-7.) [Dkt 191.] Defendants also request attorneys' fees estimated at $5,487. (*Id.*)

**Legal Standard**

Defendants' motion does not identify the authority under which it seeks relief. In violating the Confidentiality Order, Instant's conduct could be framed as contempt of court, but defendants' motion is not denominated as such, so the motion will be treated as a request for relief under Fed. R. Civ. P. 37(b), which provides remedies for failing to comply with "an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A).

It should be noted that there is some disagreement about whether language of Rule 37(b)(2) encompasses violations of a protective order governing the production of confidential documents. *Compare Lipscher v. LRP Publications, Inc.,* 266 F.3d 1305, 1322-23 (11th Cir. 2001) (holding that Rule 37(b) does not encompass protective orders issued pursuant to Rule 26(c)), *with Smith &*

*Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488-89 (5th Cir. 2012) (finding that protective order governing production of confidential material fell under Rule 37(b)(2)'s definition of "order to provide or permit discovery" and upholding sanctions award); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (upholding award of attorneys' fees for violation of a protective order under Rule 37(b)). The Seventh Circuit has not spoken to the issue, but courts in this district have disagreed with *Lipscher* and issued sanctions under Rule 37(b) for violations of a confidentiality order. *See, e.g., Whitehead v. Gateway Chevrolet, Oldsmobile*, No. 03 C 5684, 2004 WL 1459478 at *3 (N.D. Ill. June 29, 2004). The advisory committee notes to Rule 37(b) state that "Rule 37(b)(2) should provide comprehensively for enforcement" of orders issued under Rule 26(c). Fed. R. Civ. P. 37 advisory comm. nn. (1970). Thus, in agreement with the Fifth Circuit and other courts in the district, this court concludes that Rule 37(b) may be applied to violations of confidentiality orders.

Rule 37(b) permits the court to enter "further just orders" (Fed. R. Civ. P. 37(b)(2)(A)), and directs that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust" (Fed. R. Civ. P. 37(b)(2)(C)).

**Discussion**

There is no doubt that Instant violated the Confidentiality Order; the only issue is whether sanctions and further relief are justified. Instant claims that the inclusion of the exhibits on the public record was "accidental" and "an innocent clerical error," but the response of Instant's counsel

6

is not consistent with that claim. Upon being notified that Instant had put Connect Search's highly sensitive financial documents that had been marked "Confidential–Outside Counsel Only" on the public record, the response of Instant's counsel was not at all the response of someone who has been notified of a "clerical error." The response of someone who has made an innocent mistake – especially a mistake that violates a court order – is to apologize and take immediate action to correct the mistake. Notably, *not once* in any of the email preceding the filing of defendants' motion is there any apology on the part of Instant's counsel. The first apology from Instant's counsel is attorney Ritter's email the day *after* defendants filed their motion.

Instead, Instant's counsel's response was, in effect, to challenge the designation, demanding that defendants identify what was confidential about the documents before Instant would take any action to rectify its error. That is not the procedure required by the Confidentiality Order, which as described above, requires that the documents be maintained in their confidential status until disputes about designation are resolved. Attorney Ritter admits that instead of acting immediately to seal the documents, he and his co-counsel spent days *with the documents on the public record*, while, they claim, they were trying to negotiate redactions. He admits that it was only on Friday afternoon – after defendants threatened to bring the matter to the court – that he decided to take action to remove the documents from the public record. (Ritter Decl. ¶ 10.) It took another two days for Instant to get the documents sealed. By then Connect Search's confidential documents had been on the public record for almost two weeks, during which time any member of the public, including Instant's officers and employees, could have seen them.

This case is an exceedingly acrimonious lawsuit between two competing businesses. Instant has complained strenuously about defendants' alleged unfair competition. One can imagine that if

7

the situation were reversed and defendants had put Instant's confidential information in the public record for nearly two weeks, Instant would not be satisfied to brush it off as an "innocent clerical mistake."

Defendants are understandably concerned that Instant's officers or employees have seen Connect Search's confidential information in violation of the "Outside Counsel Only" designation. Hence, defendants want the court to order Instant to provide further affidavits disclosing whether anyone at Instant has viewed or had access to any "Outside Counsel Only" documents. Instant's response does not directly answer that question. Instant's counsel Ritter's email of June 6, 2013 stated that "the documents that are the subject of [defendants'] motion have not been sent to [Instant]." (Pl.'s Resp., Ex. 2.) The Illinois Rules of Professional Conduct governing attorney-client relationships, however, require that an attorney "keep a client reasonably informed about the status of a matter." Ill. R. Prof. Conduct 1.4(a)(3). It is hard to believe that Instant's counsel would not have sent to their client a copy of such an important filing as a motion for preliminary injunction and supporting memorandum, including the exhibits, especially given the time that elapsed before Instant took any action to remove the documents. Even assuming, *arguendo,* that Instant's counsel did not send their client a copy of the memorandum and exhibits, that does not answer the question of whether Instant's employees or officers saw the documents during the almost two weeks they were open to the public.

Accordingly, defendants' requests for further proof on that question is granted. The court is quite certain that, were the situation reversed, Instant would demand no less. Instant is ordered to file a further declaration or affidavit (or more than one if necessary) setting out the facts regarding whether the "Outside Counsel Only" documents included as exhibits to the memorandum were

8

provided to or seen by any officer or employee of Instant at any time, including the time when the documents were on the public record, and whether the contents of those documents were conveyed to anyone but the persons permitted pursuant to the Confidentiality Order.

As to the issue of attorneys' fees, although Instant caused the confidential documents to be sealed before the present motion was filed, the email from Instant's counsel Ritter stating that the documents were not sent to anyone at Instant only came after defendants filed their motion, and two days after defendants originally requested confirmation. Instant's counsel Ritter avers that this delay was due to his traveling, and puts the blame on defendants' counsel for not calling him rather than emailing him. (Ritter Decl. ¶¶ 13-15.) That is not responsive, however, because defendants' counsel's email was addressed to attorney Burke; attorney Ritter was only copied on it. There is no explanation why attorney Burke, the addressee, did not respond at all to defendants during those two days. Given the unnecessary delay in getting the documents removed from the docket caused by Instant's counsel in the first place, and the lack of response, defendants reacted reasonably in filing the day after receiving no response to their confirmation request.

Whether or not the original filing of protected confidential documents was, as Instant characterizes it, a "regrettable, but innocent oversight" (Pl.'s Resp. at 2), Instant's response when the filing was brought to its counsel's attention cannot be justified. Instant should have taken immediate action to correct the matter. That it did not do so takes its conduct out of the category of "innocent mistake" and transforms it into a conscious decision to act contrary to the Confidentiality Order.

Accordingly, defendants should be awarded their expenses including attorneys' fees in bringing their motion. This court, however, cannot enter a final order on the award, but can only

9

recommend a disposition to the district judge. *See Cleversafe, Inc. v. Amplidata, Inc.*, 287 F.R.D. 424, 430 (N.D. Ill. 2012). Before a report and recommendation is issued on this matter, the amount of fees should be determined. Defendants have estimated their expenses at $5,487, but further documentation will be needed to substantiate that amount. Prior to any further filing, however, the parties shall meet and confer to determine whether they can agree to an amount. If no agreement can be reached, defendants' submission in support of its request for fees is due by November 22, 2013. Instant may file a response contesting the amount requested by December 6, 2013. The court will then issue a report and recommendation to the district judge.

**Conclusion**

For the aforementioned reasons, Defendants' Emergency Motion for Protective Order and Sanctions [dkt 179] is granted. Plaintiff shall file the affidavit or declaration required by this order no later than November 22, 2013. The parties shall meet and confer to determine whether they can agree to an amount for defendants' fees. If no agreement can be reached, defendants' submission in support of its request for fees is due by November 22, 2013. Plaintiff may file a response contesting the amount requested by December 6, 2013.

_____
**Geraldine Soat Brown**
**United States Magistrate Judge**

**DATE:** November 8, 2013